# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| THOMAS J. MATOR and VELMA B. MATOR, | CASE NO. 05-60060 |
| | HON. MARIANNE O. BATTANI |
| Plaintiffs, | |
| v. | |
| CITY OF ECORSE, a Michigan Municipal Corporation, and DAVID JACOBS, Building Official for the City of Ecorse, | |
| Defendants. | |
| DONALD HART, | CASE NO. 05-71061 |
| | HON. MARIANNE O. BATTANI |
| Plaintiff, | |
| v. | |
| CITY OF ECORSE, a Michigan Municipal Corporation, and DAVID JACOBS, Building Official for the City of Ecorse, | |
| Defendants, | |
| ISTVAN BERDO, | CASE NO. 05-72054 |
| | HON. MARIANNE O. BATTANI |
| Plaintiff, | |
| v. | |
| CITY OF ECORSE, a Michigan Municipal Corporation, and DAVID JACOBS, Building Official for the City of Ecorse, | |
| Defendants. | |
| ALFRED J. CUREAU, JR. | CASE NO. 05-72055 |
| | HON. MARIANNE O. BATTANI |
| Plaintiff, | |
| v. | |
| CITY OF ECORSE, a Michigan Municipal Corporation, and DAVID JACOBS, Building Official for the City of Ecorse, | |
| Defendants. | |

_____/

## OPINION AND ORDER ON DAMAGES

This matter came before the Court on a bench trial, beginning October 3, 2006, and concluding October 16, 2006. Plaintiffs bring their claims under 42 U.S.C. § 1983, and the Court has jurisdiction pursuant to 28 U.S.C. § 1331.

At trial, Alfred Cureau, Donald Hart, Velma Mator, Daniel Vlachos, Istavan Berdo, Chris Jaciuk, David Jacobs, Jr., Bob Smith, Carl Douglas Brown, Theresa Capra, and Marcia Brown testified. The Court also received and reviewed the deposition testimony of Thomas Mator. The Court received Plaintiffs' Exhibits 3-5, 9, 11-15, 17-20, 22-24, 26, 28, and 31, as well as Defendants' Exhibits 200-203, 206, 207, 2010, 2013, 2013B, 2014-2016, 2018-2020, 2025, 2027, and 2028.

The Court, having considered the evidence submitted and the legal arguments of the parties, enters the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52(a).

## I. INTRODUCTION AND BACKGROUND

These cases arise out of zoning disputes between Plaintiffs and Defendant City of Ecorse ("City") and its Superintendent of the Department of Public Works, Defendant David Jacobs. After the City instituted a clean-up policy, its Building Department began issuing citations to any houses that were nonconforming as to set backs or lot size and were vacant for over six months.

Defendants maintain that the property at issue here was vacant and had been for more than six months in violation of Art. XIV, §(e)(5) of the Ecorse Zoning Ordinance.

Consequently, the City placarded the houses and required the owners to obtain certificates of occupancy before the houses could be occupied. The properties involved are located at 4512 Monroe Street, Ecorse, 4266 High Street, Ecorse, 4349 Sixth Street, Ecorse, and 3804 High Street, Ecorse. The properties were all built prior to the January 19, 1983 enactment of the Zoning Ordinance and the nonconformities were grandfathered.

Plaintiffs subsequently filed complaints, alleging that Defendants deprived them of a property interest without due process of law in violation of the Fourteenth Amendment. In each case, it was undisputed that the subject property was built prior to January 19, 1983, the date the City of Ecorse passed and adopted its Zoning Ordinance. Although the subject properties did not conform to the Zoning Ordinance's requirements, under Article 11.002(a) of the Zoning Ordinance, nonconforming uses are permitted to continue until lawfully discontinued or eliminated. Article 11 § 11.002(e)(5) of the City of Ecorse Zoning Ordinance provides in relevant part: Nonconforming Uses of Structures of Land.

> If a lawful use of a structure, or of structures and land in combination, exists at the effective date of adoption or amendment of this Ordinance, that would not be allowed in the district under the terms of this Ordinance, the lawful use may be continued so long as it remains otherwise lawful, subject to the following provisions:
>
> * * *
>
> When a nonconforming use of a structure, or structure and premises in combination is discontinued or ceases to exist for a period of (6) consecutive months for a period of eighteen (18) months during any three (3) year period, the structure, or structure and premises in combination shall not thereafter be used except in conformance with the regulations of the district in which it is located. Structures occupied by seasonal uses are exempt from this provision. . . .

The ordinance authorizes loss of nonconforming status because of vacancy. The Court examined the attendant procedures in motions for summary judgment, finding Plaintiffs had

-3-

no opportunity to contest the loss of their property's grandfathered status before the zoning board. Specifically, Plaintiffs had no opportunity to dispute the City's finding that the properties were vacant in excess of six months; their only recourse was to request a variance for their properties. The Court already found that the procedures violated Plaintiffs' due process rights and awarded summary judgment to Plaintiffs as to liability. Accordingly, the only issue before the Court is damages.

## II. FINDINGS OF FACT

Plaintiffs' first witness, Chris Jaciuk, has been a licensed appraiser since 1991. He prepared appraisals on the four properties at issue here. As noted by Jaciuk, these appraisals were "based upon the extraordinary assumption that the property was in "average" market condition, irregardless (sic) of the current condition of the dwelling." See e.g. P8.

Defendants offered several witnesses to contest these appraisals, and in particular the fact that Jaciuk ignored conditions of the property and valued the property as if it were fixed up and maintained. Theresa Capra, a City of Ecorse employee working in the assessor's office, disputed the comparable properties used by Jaciuk in reaching his market values. See Defs.' Ex. 2026. She further testified that the appraising approach utilized by Jacuik was flawed because it was based upon "what could be, not what already is." In sum, his appraisals assumed the houses were in good condition, and they are not. Jacobs, who has been employed by the City since 2003, testified to the current conditions of the properties at issue in this case. Carl Brown, a building official for the City of Ecorse, testified about the code violations of the properties. Marcia Brown, an ordinance office employee, testified about the tickets issued to Plaintiffs. See Defs.' Exs. 201-203, 206,

2013, 1029(a), 218, 2019, 2020, 2025, 2027, 2010, 2027, and 2028. The Court renders its findings relative to the individual properties below.

### A. Mators/ 4512 Monroe Street

Thomas and Velma Mator are the former owners of property located at 4512 Monroe Street in Ecorse. Thomas Mator testified that he lived in the property briefly after he purchased it for less than $20,000, in 1978 or 1979. Thereafter, he rented it with a purchase option. The most recent occupant, James Hill, lived in the property for between two and three years. Hill abandoned the property when he moved for a job. According to Thomas Mator's deposition testimony, contrary to the City's position that the property was vacant for six months, the land contract purchaser moved out less than four months before the City placarded the property. In February 2004, Mator received two misdemeanor ordinance violation tickets for having dog feces and litter in the yard, and one for failing to obtain a certificate of occupancy. Mators unsuccessfully challenged these code violations in court. Defs.' Ex. 2020. According to Mr. Mator, prior to the initial court hearing, the city attorney offered to dismiss the charges, provided Plaintiffs gave the property to the City to be torn down. Pls.' Exs. 30.

Mators subsequently applied for an inspection of the property to obtain permits to improve the property and for the necessary certificate of occupancy. Defendants denied both. After the building department refused to issue a certificate of occupancy, Thomas Mator "gave up" and sold the property for $1000 to Daniel Vlachos on June 11, 2004. Pls.' Ex. 28. Vlachos, who was a building inspector and contractor, testified that the house could be completely renovated for approximately $16,000. Jaciuk set the market value at $62,000. Consequently, Mators claim a net loss of $45,000.

### B. Hart/4266 High Street

Donald Hart testified that he purchased the property at 4266 High Street and lived in it until 1997. The property was damaged by fire on August 10, 2001. The property sustained "heavy damage." Defs.' Ex. 2019b. Hart admitted that the house looked "real bad." He acknowledged that the property was vacant, had been broken into, siding had been stripped, and windows were missing. Hart testified that he had received half a dozen ticket relating to the condition of his property and had been to court 8-10 times. See e.g. Defs.' Exs. 2014, 1013B, 2015, and 2016. No one had lived in the house for as many as six years, and Hart never made repairs due to his lack of funds.

Hart received a home equity loan in that amount on September 21, 2004. Although Hart scheduled two inspections for a certificate of occupancy, he failed to keep his appointments. Defs.' Ex. 2018, Defs.' Ex. 2019. Hart testified that he forgot about the first appointment. His request for permits were refused on October 6, 2004. Hart estimated the total cost of repairs to the house to be $10,000. He planned on completing the repairs himself, and testified that tit would take him two months to repair the property.

According to Jaciuk, Hart could collect rent in the amount of $725.00 per month based upon the assumption that the property was in market ready condition. Pls.' Ex. 22 at 6.

### C. Berdo/4349 Sixth Street

Istvan Berdo testified that he purchased his home at 4349 6th Street in Ecorse on October 9, 2003, for $40,000 at a foreclosure sale. He testified that he purchased the property with the intention to rent it or sell it. He had the property inspected in December

2003. Pls.' Ex. 3.

Berdo received a citation on March 10, 2004, for backyard blight and failing to properly maintain his garage. Defs.' Ex. 203. The City of Ecorse cited Berdo's property again on August 27, 2004, and November 3, 2004, for blight, junk and debris. Defs.' Exs. 201-202. Berdo pleaded guilty to the offenses on March 7, 2005. Defs.' Ex. 204. On May 31, 2005, Berdo was cited for high grass/weeds in his front and back yard. Defs.' Ex. 200.

At trial, Berdo claimed that his absence from home for work and for travel led to these problems. He applied for four inspections in February 2005, and learned that his property had lost its nonconforming status. Pls.' Exs. 4, 5. He testified that he needed three months to complete the work to bring the property up to code, and based upon Jaciuk's appraisal, seeks rental value of $850.00 per month from May 7, 2005.

Defendants challenged Berdo's credibility, contrasting his October 2003 Homestead Affidavit, in which Berdo stated that the property was his primary residence, with his answer to an interrogatory, in which he stated he had been living at the house only since March 27, 2005. Jaciuk reported that Berdo's mother occupied the property at the time he appraised it. The Court finds that Berdo was less than forthright about whether the Sixth Street property was his primary residence in October 2003. Regardless of Berdo's intent at the time he purchased the property, either Berdo or his mother or both lived at 4349 Sixth Street.

### D. Cureau/3904 High Street

Plaintiff Alfred Cureau is a commercial real estate investor. Cureau made the original offer on the property at the end of November; however, the deal was not

consummated until March 29, 2004. He purchased the property at 3804 High Street for $65,709.67. According to a June 12, 2003 inspection report prepared by the City, the front structure required no repairs and the rear structure would be approved after specified repairs were made. Pls.' Exs. 9d, 9e. Cureau intended to renovate the rear unit. Cureau testified that the cost of bringing the rear unit into compliance was approximately $4,000 ($3,000 for materials and $1,000 for labor); the front unit would cost approximately $500 in materials and labor. He subsequently purchased building materials for repairs and applied for a permit, which he received April 6, 2004. Pls.' Exs. 12, 13, 15, 17-20.

However, a letter dated April 7, 2004, from Carl Brown, rescinded the permits. The revocation letter from the City stated that the permits were issued in error because the subject property was nonconforming. Defs.' Ex. 209. According to Cureau, the Mayor blamed the Building Department and the Building Department blamed the Mayor for the error.

Bob Smith, a licensed real estate agent who acted as the buyer's agent when Cureau purchased 3804 High St., testified that he and Cureau met with the Mayor on April 15, 2004. Smith testified that he had researched the property prior to Cureau's offer. Smith also testified that he confirmed that multifamily use was allowed through the building department. There is no dispute that the front unit was rented until November 2003, after which time it became vacant. Cureau, unlike the other Plaintiffs, did seek a variance, which was denied by the Zoning Board on June 7, 2004.

Jacobs testified that the city contractor boarded up and padlocked Cureau's property on June 29, 2004. Defs.' 2027. He testified that the police ordered the boarding up because vagrants were inside and the back door of the property was open. This testimony

was not supported by documentation of police calls or other documentation, and it is unclear who ordered the property to be boarded up. The Building Department pointed to the police; Plaintiffs blamed the Building Department. It is undisputed that Cureau never received a citation, ticket, or notice about the property. Cureau never contacted the City after the Zoning Board hearing.

Eight months later, in February 2005, the City contacted Cureau. Water pipes in his property had burst, and water had run into the neighbor's property. The City sought permission to shut off the water. Cureau has not been inside the property, and there is no evidence before the Court as to the damage that resulted.

Jacuik appraised the property's value at $67,000, and testified that Cureau could get $400 income from rent for the one bedroom and $700 per month for the three bedroom. Pls.' Ex. 22.

## III. CONCLUSIONS OF LAW

Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or caused to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must establish (1) that a person acting under color of state law (2) deprived the plaintiff of a right secured by the Constitution or laws of the United States." Waters v. City of Morristown, 242 F.3d 353, 358-59 (6th Cir. 2001). Plaintiffs already have succeeded in demonstrating liability. The only issue to be resolved by the Court is entitlement to damages.

The basic purpose of an award of damages under § 1983 is compensation for injuries caused by the deprivation of constitutional rights. Farrar v. Hobby, 506 U.S. 103, 112 (1992). The actual injury suffered as a result of a procedural due process violation encompasses two types: the distress actually suffered from the denial of procedural due process itself, including emotional or mental anguish; and the injuries from an unjustified deprivation of a protected interest brought about by the violation of procedural due process rights. Injuries caused by a justified deprivation are not compensable under § 1983; only nominal damages are available. Carey v. Piphus, 435 U.S. 247, 263 (1978). In other words, "in cases where the deprivation would have occurred anyway, and the lack of due process did not itself cause any injury, the plaintiff may recover only nominal damages." Zinermon v. Burch, 494 U.S. 113, 126 n.11 (1990) (citation omitted). So for example, if Plaintiffs would have lost their property rights after a hearing, the deprivation would be justified and only nominal damages may be awarded.

The amount of compensatory and punitive damages to be awarded "is left to the discretion and good judgment of the fact finder as guided by the facts of the particular case." Smith v. Heath, 691 F.2d 220, 226 (6th Cir. 1982).

**A. Compensatory Damages**

In these cases, vacancy was the sole basis of the loss of nonconforming status. Nevertheless, Plaintiffs had no opportunity to present evidence disputing this basis. In Rudnik v. Mayers, 196 N.W.2d 770, 773 (Mich. 1972), the Michigan Supreme Court held that the term "discontinued" in a zoning regulation context, as it pertains to a nonconforming use statute, is synonymous with the term "abandoned." Thus, "a temporary cessation of a nonconforming use or the temporary vacancy of buildings used for a

nonconforming use does not in and of itself operate to effect abandonment of the nonconforming use, where the circumstances, conditions, and statements of the owner are consistent with or evidence of an intention not to abandon the nonconforming use." Id. (citations omitted). In Dusdal v. City of Warren, 196 N.W.2d 778 (Mich. 1972), the court recognized that use might not be made because of depressed times, inability to secure a tenant, or some other reason. Hence, a lapse in occupancy is not dispositive; intention is part and parcel of the analysis. Rudnik, 196 N.W. 2d at 773.

### 1. Mators/4512 Monroe Street

Jacuik set the potential market value of Mators' property at $62,000. Mators received $1,000 on the sale of the property to Vlachos. Vlachos testified that renovations to bring the house up to code would cost approximately $16,000. Consequently, Mators claim a loss of $45,000.

Defendants contend that Mators' own financial problems and failure to maintain their property caused their damages, not a violation of due process. Defendants add that the cost of repairs to Mators' property to bring it up to code would have exceeded 50% of the state equalized value ("SEV"), an independent basis for denying building permits. See Art. 11.00, §11.02g of the Zoning Ordinance.

The Court rejects Defendants' strategy to contest damages on the ground that the costs of repairs of Mators' house gave them ample grounds upon which to deny building permits. Defendants presented no evidence of the cost of the repairs relative to the SEV at the time the property was declared nonconforming. Nor was the testimony as to the estimated cost of repairs offered by Defendants supported by testimony as to the specific repairs needed or how those repairs related to the zoning ordinance specifications. The

Court finds the after-the-fact justification a convenient excuse rather than a legitimate justification for Defendants' conduct. The basis for the loss of nonconforming status of Mators' property was vacancy.

Here, the Court finds Mators had no intention of abandoning the property when Hill left. They contested the tickets they received and hoped to make repairs and obtain a certificate of occupancy. They had arranged to sell the Monroe Street property on land contract on more than three occasions. This situation was not new to the Mators.

The Court finds it necessary, however, to discount the assessment rendered by Jaciuk for several reasons. First, Jaciuk did not enter the house; he was unable to assess the value of the property at the time the violation occurred. Second, on at least three previous occasions, tenant/buyers left the property before ownership of the property transferred. The fact that Mators had to enter into a land contract sale on four occasions because the occupants walked away from the property erodes the value attributed to the property by Jaciuk. Additionally, Mators did not enter into evidence a copy of their agreement with Hill, which would have provided the Court with a significant basis upon which to assess the market value of the property. Even if the Court were willing to accept the extraordinary assumption underlying Jaciuk's assessment, it is unwilling to adopt wholesale the figure he advanced. Accordingly, the Court awards damages in the amount of $22,500 to Mators or 50% of the amount requested by Plaintiffs.

### 2. Hart/4266 High Street

Hart seeks compensatory damages of $29,000. Jaciuk testified that the fair rental return on the house would be $725.00 per month, and Hart claims a loss of rental value from December 6, 2004, two months from the City's denial of his permit request.

Hart did not establish any actual injury caused by the lack of due process. His home was vacant, uninsured, had no operating utilities, Defs.' Ex. 2017, and had been unoccupied since 1998. The Court holds that the subject property has not been in habitable condition since 1998, and that Plaintiff failed to show that the deprivation was not justified. Given the passage of time, the Court finds there was no question that the City could establish vacancy. Hart's request for permits simply was too little, too late. Accordingly, the Court awards nominal damages in the amount of $1.00.

### 3. Berdo/4349 Sixth Street

Berdo requests damages in the amount of $850.00 per month for loss of the fair rental value of the property. He testified that he could have complied with the building code within three months of acquiring building permits or May 7, 2005. Therefore, his loss through June 6, 2007, is $21,250.00.

The Court rejects Defendants' contention that Berdo suffered no damages because his request for an inspection included a request to build additional structures on his triple lot. Although a variance would have been required, the additional structures did not form the basis for the appraisal. Consequently, that factor is immaterial to the assessment of damages. The Court nevertheless finds that Berdo's damages are nominal inasmuch as he and/or his mother resided in the house during the time he seeks fair rental damages. Therefore, the amount requested would in fact be a windfall. Accordingly, the Court awards Berdo nominal damages in the amount of $1.00.

### 4. Cureau/3804 High Street

Cureau invested $82,297.68 in his property, and he seeks this amount in damages. The total includes the purchase price of the property, $65,709.67, interest in the amount of $6,226.01, taxes paid in the amount of $4,238.00, repair materials for the rear unit in the amount of $3,000, property insurance in the amount of $2,361, a building permit which cost $40, and the appeals fee in the amount of $300.

Defendants claim that Cureau suffered no damage because the property was zoned single family, not multifamily residential. Defendants provided no documentary evidence to support their position that the property was zoned single family, although it is clear that the Zoning Board of Appeals reached that conclusion. The Court credits the testimony of Smith that the tax records and real estate listing showed that, contrary to Defendants' position, the property was zoned multifamily. Smith testified that he confirmed the use with the Building Department. The June 2003 property inspection report likewise supports that the property had been used as multifamily. The Court recognizes that this litigation does not authorize appellate review of the Board's findings. Nevertheless, Defendants presented no evidence to the Court that the loss of such grandfathered status could have occurred absent a determination that the property had been vacant for six months.

Here, the Court finds that Cureau is not entitled to the purchase price of his property. He still owns the property, and no basis upon which the Court could declare the property worthless was presented during trial. Cureau has not entered the property since it was padlocked, and he has not assessed the water damage sustained in February 2004. There was no testimony as to the current condition of the inside of the property.

Cureau is not left without a remedy. Jaciuk's appraisal set income from rent for the

one bedroom at $400 per month and income from the three bedroom at $700 per month. Accordingly, the Court will limit its award of damages to the fair rental income of the property, in the amount of $1100 per month from the date of the violation. In this case, the Court finds that the violation occurred on June 7, 2004, when the Zoning Board issued its decision denying a variance and determining that the property was nonconforming because, among other things, it had been vacant for six months. Accordingly, Cureau is entitled to rental income for 36 months, $39,600.00.

### B. Punitive Damages

Punitive damages are appropriate "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). The Sixth Circuit "has phrased the standard for defendant's conduct to warrant punitive damages as grossly negligent, intentional, or malicious." Hill v. Marshall, 962 F.2d 1209, 1217 (6th Cir. 1992).

Plaintiffs request three time the compensatory damages amount in punitive damages for the City's "willful and malicious conduct for refusal to provide post deprivation hearing or permit Plaintiff to comply with City's Zoning ordinance and obtain certificate of occupancy after summary judgment was awarded."

The Court finds Plaintiffs failed to show entitlement to punitive damages. The Court heard no evidence upon which to conclude an award of punitive damages is warranted. The deprivation here was not malicious, intentional, or grossly negligent. Defendants merely intended to clean up the City.

### C. Attorney Fees

Congress provides for the award of attorney fees to prevailing parties in § 1983 cases. 42 U.S.C. §1988; Pouillion v. Little, 326 F.3d 713, 716 (6th Cir. 2003). A party that receives even nominal damages is prevailing under § 1988. Farrar, 506 U.S. at 112. In this case, Plaintiffs prevailed on summary judgment motions. The only issue at trial was damages. Therefore, the Court finds that Plaintiffs are entitled to reasonable attorney's fees under § 1988. Plaintiffs shall file a petition for attorney's fees on or before **June 22, 2007**. Defendants may file any objections thereto on or before **July 6, 2007**.

## IV. CONCLUSION

Accordingly, the Court awards damages as follows: $22,500 to Mators; $1.00 to Hart; $1.00 to Berdo; and $39,600 to Cureau.

**IT IS SO ORDERED**.

s/Marianne O. Battani  
MARIANNE O. BATTANI  
UNITED STATES DISTRICT JUDGE

Dated: June 14, 2007

### CERTIFICATE OF SERVICE

A copy of this Order was e-filed and/or mailed to counsel of record on this date.

s/Bernadette M. Thebolt  
Deputy Clerk